## McFADDIN v. JEFFERSON COUNTY DRAINAGE DIST. NO. 6.
### (No. 1076-4822.)

Commission of Appeals of Texas, Section A.
March 28, 1928.

1. **Drains** ⚖️68—Statute providing tax for maintenance and payment of legal debts held to comprehend payment of all legal claims against drainage district (Rev. St. 1925, art. 8138).

Rev. St. 1925, art. 8138, providing for district tax for purpose of maintaining and repairing drainage improvements of drainage districts and for payment of legal debts and demands against district, *held* to comprehend tax not only for payment of claims for labor and material used in making repairs, but also all other claims for payment of which district is legally liable.

2. **Drains** ⚖️67—Constitution authorizing tax for construction of drainage system authorizes tax for payment of claims for property damage arising from drainage improvement (Const. art. 3, § 52; art. 1, § 17).

Const. art. 3, § 52, authorizing a defined district tax for construction and maintenance of pools, lakes, reservoirs, dams, canals, and waterways, for purpose of drainage or in aid thereof, *held* to impliedly grant power to Legislature to tax for payment of just claims for direct damage to private property arising from system of drainage improvements, especially in view of article 1, § 17, providing no person's property shall be damaged without adequate compensation.

3. **Drains** ⚖️57—Landowner claiming damage from overflow caused by drainage improvement cannot restrain expenditure of district's funds, statute affording means of payment (Rev. St. 1925, art. 8138).

Landowner having claim against drainage district for damage to land alleged to have been result of overflow caused by drainage improvement *held* not entitled to restrain expenditure of funds of district in order that he might bring action to satisfy his claim, under Rev. St. 1925, art. 8138, affording landowner means for satisfaction of such judgment as he might recover.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by W. P. H. McFaddin against Jefferson County Drainage District No. 6. To review an order of the Court of Civil Appeals (291 S. W. 322), reversing an order of district court granting temporary injunction, plaintiff brings error. Affirmed.

Howth, Adams & Hart, of Beaumont, for plaintiff in error.

Oliver J. Todd, Chas. S. Pipkin and A. D. Moore, all of Beaumont, for defendant in error.

HARVEY, P. J.. Jefferson county drainage district No. 6 is legally organized as a drainage district under the provisions of chapter 7, tit. 128, of the Revised Civil Statutes. The district voted bonds and with proceeds thereof has heretofore constructed an extensive system of drainage improvements in the district. A balance of $78,000 from the bond proceeds was left after completing the work above mentioned. The district now proposes to construct additional drainage ditches and improvements, supplementary to the main system already constructed; for which additional improvements the $78,000 now on hand is intended to be spent.

The plaintiff in error brought this suit for damages in the sum of $50,000, alleged to have been caused by the drainage improvements heretofore constructed, and for injunction to restrain the trustees of the drainage district from expending the $78,000 now on hand and from constructing the proposed additional drainage improvements. As grounds for such injunction he alleges, in substance, that Taylor's bayou is a natural water course which runs through the drainage district; that he owns a large tract of land bordering upon and in the vicinity of the bayou, some distance below the drainage district; that the system of drainage improvements that has been constructed causes the surface water of the drainage district to be collected and thrown with great rapidity and volume into Taylor's bayou, greatly overtaxing the natural capacity of that stream, and thereby causing the waters from the bayou to overflow the lands of the plaintiff in error and damage same; that unless the expenditure by said district of the funds now on hand be restrained, the plaintiff in error will have no means of collecting his claim for damages. The plaintiff in error, as further ground for injunction, alleges that the proposed additional drainage improvements will cause further damage to his land, and seeks to enjoin the construction of those additional improvements. The trial court granted a temporary injunction restraining the trustees of the district from expending the $78,000 now on hand, and from constructing the additional drainage improvements that are proposed. From the order granting such temporary injunction the drainage district appealed, and the Court of Civil Appeals reversed the order of the trial court and dissolved the temporary injunction.

[1] Article 8138 of the statutes makes provision for a district tax for the purpose of maintaining and repairing the drainage improvements of a drainage district, and to pay legal debts and demands against the district. The purposes for which this tax is provided comprehend not only the payment of claims for labor and material used in making repairs, but also all other claims for the payment of which the district is legally liable. It therefore becomes necessary to examine the Constitution for the purpose of determining the power of the Legislature to authorize a tax for such purposes, without a vote of the people of the district.

[2] Section 52 of article 3 of the Constitution authorizes a defined district, under legislative provision and by vote of the people therein, to issue bonds for "the construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of * * * drainage * * * or in aid thereof." The same section also expressly empowers the Legislature to authorize a tax in the district for the purpose of paying the interest and principal of the bonds so issued. These constitutional provisions contemplate the construction of drainage improvements of an enduring and permanent nature for the purpose of permanently securing to the people of the district the benefits resulting from their construction and maintenance. The improvements that are authorized are of such character that, in the natural course of things, their maintenance is capable of causing damage to private property. It is believed, therefore, that, by implication arising from such provisions, the Legislature is given power to authorize a tax in the district, as occasion requires, for the purpose of keeping such improvements in a perpetual state of efficiency and of paying all valid claims against the district which arise from the maintenance and operation of those improvements. This view is not wholly without support of judicial precedent. For it has been held in the case of Ogburn v. Barstow, Ward County Drainage District (Tex. Civ. App.) 230 S. W. 1036, in which case the writ of error was denied, that the Legislature has implied power, under these constitutional provisions, to authorize this tax for the purpose of maintaining and keeping in repair the drainage improvements which are constructed in pursuance of the provisions of section 52 of article 3 of the Constitution and of the statutes on the subject. No sound reason is discovered for excluding from such provisions an implied grant of power to the Legislature to make like provision for the payment of just claims for direct damage to private property.

Additional support for this implied power is gained from a consideration of that provision of section 17 of article 1 of the Constitution, which reads as follows:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person."

This provision comprehends such direct damage to private property as results from the maintenance of improvements made for the public benefit, by a political subdivision of the state, under authority from the state. Nussbaum v. Bell County, 97 Tex. 91, 76 S. W. 430; Harris County v. Gerhart, 115 Tex. 449, 283 S. W. 139. The provisions of section 52 of article 3, as we construe them, accord in every respect with the constitutional provision just referred to, in that by said section the Legislature is impliedly invested with power to make suitable provision for adequate compensation, in every case, for such direct damage to private property as results from the maintenance of the drainage improvements there authorized. Without the intervention of legislative authority in this respect, compensation, in many cases, would not be susceptible of judicial enforcement; and in such cases the abatement of the offending improvements would be the only recourse open to the citizen for the enforcement of the rights guaranteed to him by the provisions of section 17 of article 1 of the Constitution. Besides, cases would often arise in which the abatement of the improvements would not redress an infringement of those rights.

[3] It is our opinion that if an action lies in favor of the plaintiff in error for the recovery of the damages claimed by him—a question we find unnecessary to decide at this time—the provisions of article 8138 of the statutes afford means having constitutional warrant, for the satisfaction of such judgment as the plaintiff in error may recover. Injury to him cannot result from the mere fact of expenditure of the district funds now on hand. He therefore is not entitled to restrain the expenditure of those funds.

With regard to that feature of the order of the trial judge, which temporarily enjoins the construction of the additional drainage improvements that are proposed to be made, the Court of Civil Appeals has found, in effect, that the evidence contained in this record does not support the allegations of additional injury to the lands of plaintiff in error in case the proposed additional improvements are constructed. In the light of the record before us, we cannot say that the Court of Civil Appeals has erred in this respect.

For the reasons which we have stated, and for those reasons only, we recommend that the judgment of the Court of Civil Appeals dissolving the temporary injunction granted by the trial judge be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed.